UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
CITY OF BOSTON,                     )
                                    )
            Plaintiff,              )
                                    )
v.                                  )    CIVIL ACTION NO: 03-12415-RWZ
REINAUER TRANSPORTATION             )
COMPANIES, LLC,                     )
                                    )
            Defendant.              )
_____)

**JOINT PRETRIAL MEMORANDUM**

In accordance with this Court's Procedural Order dated January 4, 2007, the parties submit this pretrial memorandum.

<u>Plaintiff's Summary of the Evidence</u>

The City of Boston is now, and was on December 2, 2000, the owner of the Chelsea Street Bridge (the "Bridge"), a single leaf bascule bridge that spans the Chelsea River and connects East Boston and Chelsea, Massachusetts. The Bridge has a fendering system consisting of steel piles, wooden timbers, dolphins, and other structural components. It stands in the river on either side of the channel used by vessels moving between Boston Harbor and petroleum product facilities located up the river in Revere. The Bridge permits over the road vehicular traffic to pass between East Boston and Chelsea. When a vessel proceeds upstream toward Revere or downstream toward Boston Harbor, the single span of the Bridge is raised and the vessel proceeds through the draw between the draw. The horizontal clearance between the faces of the fendering system is 96 feet. One purpose of the fendering system is to protect the structural elements of the bridge from damage by passing vessels. The fendering system was replaced in approximately 1993, and , in 1999, a

portion of the fendering system was repaired following damage by a vessel. As discussed in the City's pending motion *in limine*, the City believes that the Bridge will be replaced with a new and larger bridge in the near future.

On December 2, 2000, at approximately 5:48 p.m., the tank barge RTC502, controlled by the tug DACE REINAUER and assisted by the tug HERCULES, were proceeding upstream. The tank barge and the tug DACE REINAUER are owned and operated by defendant Reinauer. The tug HERCULES was operated by Reinauer's wholly owned subsidiary, Boston Towing and Transportation Company. Defendant Reinauer's employees misjudged the clearance available on each side of the barge and otherwise failed to maintain proper control of that vessel, and the port bow of the barge struck the fendering system beneath the bridge on the Chelsea side. At the time of this allision, the fendering system in the area struck by defendant's vessel was in good condition and visible above the water line. The City's bridge tender had opened the Bridge as requested by the defendant's employees, and the way was clear for passage of the vessels through the draw. Hundreds of vessels transit the draw of the Bridge each year without causing damage to the fendering system, and defendant's vessels have passed through this draw before and after the incident without incident. The evidence will demonstrate that this allision was caused by the defendant's negligence and not by any negligence on the part of the City.

The barge, which is 78 feet wide and was loaded with a cargo of petroleum product, struck the fendering system toward the top of the structure, destroying a large section of timber walkway and associated wooden components. Numerous steel piles or bents were severely deformed, along with the channel bracing, gusset plates, weld connections, and other components. To date, these damages have not

2

been repaired. The evidence will establish that the cost of repairing these damages will exceed $400,000, applying prices close in time to the allision.

As discussed in plaintiff's pending motion *in limine*, the United States Coast Guard issued an Order to Alter dated November 23, 1992 pursuant to authority under the Truman-Hobbs Act, 33 U.S.C. Sections 511 – 522. The Order to Alter requires the City to alter the Bridge to provide greater vertical and horizontal clearance for transiting vessels. In compliance with the Order to Alter, plans for a new bridge have been prepared, but because federal funding under the Truman-Hobbs Act has not yet been sufficient to cover the construction costs, the new bridge has not been constructed. Recently, funding through the Commonwealth has been committed to this project, and the City believes that construction of the new bridge will begin in the near future.

Defendant's Summary of the Evidence

The Chelesea Bridge, by order of the United States Coast Guard dated November 23, 1992 was declared as constituting an "unreasonable obstruction to the free navigation of Chelsea Creek." By way of the same order, the Coast Guard ordered the City of Boston to "alter" the bridge by reconstructing it so as to provide "an unobstructed horizontal clearance of no less than 380 feet" – approximately triple the existing horizontal clearance provided of 96 feet. The Coast Guard issued this "order to alter" following public hearings and an investigation into the Chelsea Street Bridge which included testimony regarding extraordinary numbers of allisions occuring between vessels and the bridge. Plaintiff, however, did not alter the dimensions of the bridge as of the date of the allision underlying this law suit. On that date, tug DACE REAINAUER was pushing barge RTC 502 upstream when it first contacted the fendering system of the bridge toward the East Boston side of

3

the bridge and then hit the fendering system on the Chelsea side. The Reinauer tug and barge were navigated at the time of the allisison with due care. The tug captain had a lookout posted on the barge for the purpose of assisting him through the very narrow waterway between the spans of the bridge. The vessels engaged an assist tug boat, which given the tight parameters of the bridge could not actually transit through at the same time as did the tug and barge, one of the problems caused by the dimensions of the bridge. Reinauer will submit expert testimony in this case through Michael Duarte, a licensed captain and very experienced tug boat captain and pilot, establishing that Reinauer's vessels were operated with due care and that the cause of the accident was the unreasonable obstruction to free navigation on the Chelsea Creek created by the Chelsea Bridge – the very hazard to navigation order to be removed by the United States Coast Guard in 1992.

Defendant intends to further offer evidencing establishing that while claiming damage, the City of Boston never repaired any of the purported damage occuring from the December 2, 2000 allision (as well as several others that occurred before, and after that time). Instead, the City of Boston, utlizing funding provided entirely by the Commonweath of Massachusetts, will in short order raze the Chelease Street Bridge and construct a new bridge in its place – a bridge that complies with the Order to Alter issued by the Coast Guard in 1992. Defendant intends to establish, under the applicable law, that plaintiff was not damaged by the December 2, 2000 allision and that to the extent any damage can be claimed it is limited to the sum of approximately $75,000. While plaintiff's claim for damages has changed frequently from the date of the allision, at which time it was purported to be potentially less than $135,000 (an estimated sum which included damages from two separate allisions including the December 2, 2000 allision)  and has by now

4

grown to the approximate amount of $750,000, this sum is grossly disproportionate from estimates of the damage prepared by engineering firms engaged by the City of Boston immediately after the December 2, 2000 allision. Defendant believes it will establish that the City of Boston's damage estimates, which never were put to actual bids by construction companies since the Chelsea Street Bridge is to be razed and not repaired, are neither credible, nor do they represent the potentially recoverable measure of damages, i.e. diminution in value of the bridge.

Agreed Facts

1. The City of Boston is now, and was on December 2, 2000, the owner of the Chelsea Street Bridge (the "Bridge"), a single leaf bascule bridge that spans the Chelsea River and connects East Boston and Chelsea, Massachusetts.

2. The Bridge has a fendering system consisting of steel piles, wooden timbers, dolphins, and other structural components.

3. The fendering system is located in the river on either side of the channel used by vessels moving between Boston Harbor and petroleum product facilities located up the river in Revere.

4. The Bridge permits over the road vehicular traffic to pass between East Boston and Chelsea.

5. When a vessel proceeds upstream toward Revere or downstream toward Boston Harbor, the single span of the Bridge is raised and the vessel proceeds through the draw between the draw.

6. The horizontal clearance between the faces of the fendering system is 96 feet.

7. One purpose of the fendering system is to protect the structural elements of the bridge from damage by passing vessels.

8. On December 2, 2000, at approximately 5:48 p.m., the tank barge RTC502, controlled by the tug DACE REINAUER and assisted by the tug HERCULES, were proceeding upstream.

9. The tank barge and the tug DACE REINAUER are owned and operated by defendant Reinauer.

10. The tug HERCULES was operated by Reinauer's wholly owned subsidiary, Boston Towing and Transportation Company.

11. Tank barge RTC502 is 78 feet wide.

12. The port bow of the tank barge made contact with the fendering system beneath the Bridge on the Chelsea side.

13. The City has not repaired the damage to the fendering system occurring in this allision.

14. Tank barge RTC 502 sustained damage on its port side in this allision. The damage to the tank barge has been repaired.

15. The United States Coast Guard issued an Order to Alter dated November 23, 1992 pursuant to authority under the Truman-Hobbs Act, 33 U.S.C. Sections 511 – 522.

16. The Order to Alter states that the Bridge was found to be an unreasonable obstruction to navigation and requires the City to alter the Bridge to provide greater vertical and horizontal clearance for transiting vessels.

17. The Bridge has not yet been altered or replaced.

Contested Issues of Fact

1. Was Reinauer negligent and, if so, did such negligence contribute to cause the allision?

2. Was the City of Boston negligent and, if so, did such negligence contribute to cause the allision?

3. Did the City of Boston's suffer recoverable damages and, if so, what is the amount of such damages?

4. Did Reinauer suffer recoverable damages and, if so, what is the amount of such damages?

Jurisdictional Questions

None

Questions Raised by Pending Motions

The following questions are raised in pending motions *in limine*:

1. Whether the presumptions articulated under the Oregon Rule and the Pennsylvania Rule apply to either plaintiff or defendant;

2. Whether the U.S. Coast Guard's finding that the Chelsea Street Bridge constituted an unreasonable obstruction to navigation creates a presumption affecting the burden of proof under the applicable federal maritime law;

3. Whether damages are recoverable under the maritime law under the circumstances of this law suit, where the alleged damage to the fendering system has not been repaired and the City expects that the Bridge will be replaced in the near future under the Truman Hobbs Act findings and order issued thereunder; and,

4. The measure of damages recoverable under the maritime law.

Other Issues of Law

    None.

Requested Amendments to the Pleadings

    None

Additional Matters to Aid in the Disposition of the Action

    None at this time.

Probable Length of Trial and Whether Jury or Nonjury

    Four to five days; nonjury trial.

Witnesses

    Joseph Casazza, City of Boston Public Works Department, City Hall, Boston, MA

    James J. Burke, 5 Hallen Avenue, Milton, MA

    William T. Noonan, BSC Group, 15 Elkins Street, Boston, MA

    Ed Malnati, BSC Group 15 Elkins Street, Boston, MA

    Francis Davenport, 31 Autumn Street, Norwood, MA

    John J. Doherty, 66 Pinehurst Street, Roslindale, MA

    John E. Grieco,  DMJM+Harris, 66 Long Wharf, Boston, MA

    Roger Lambert, BSC Group, 15 Elkins Street, Boston, MA

    Michael McCall, Vollmer Associates LLP, 38 Chauncy Street, Boston

    Dan Johnson, Vollmer Associates LLP, 38 Chauncy Street, Boston

    Aboud J. Al-Zaim, Vollmer Associates LLP, 38 Chauncy Street, Boston

    Karen Meler, Vollmer Associates LLP, 38 Chauncy Street, Boston, MA

    Steven Brune, 324 Plum Street, West Barnstable, MA

    Andrew Walters, GV Engineering, 372 West Street, Keene, NH

    Carl Goldkopf, GV Engineering, 372 West Street, Keene, NH

Michael Duarte, 22 Powderhorn Way, Sandwich, MA

Albert H. Reinauer, Reinauer Transportation Co., Boston Towing & Transportation Co.

Proposed Exhibits

1. Photograph or drawing of the bridge from the water showing a side view of the bridge structure and fender system

2. Aerial photograph of the bridge

3. Plans prepared by Seelye Stevenson, Value & Knecht for Proposed Fender Pier Replacement Project dated December 1991, with revisions, 18 pages

4. Plans prepared by Vollmer and BSC Group for Chelsea Street Bridge Fender repairs dated July 1998, 11 pages

5. Vollmer report dated February 1, 2001, with photos

6. Vollmer revised report, revision date May 6, 2002, with photos

7. Bridge Logbook for 2000

8. Copy of Bridge Log page for December 2, 2000

9. Bridge Logbook for 1999

10. Bridge Logbook for 2002

11. City of Boston – Public Works Department Bridge Section Report of Accident to Person or Property dated December 2, 2000, signed by Francis Davenport and James J. Burke

8. Reinauer Report of Marine Accident, etc. (Form CG-2692) dated December 5, 2000

12. Correspondence from Reinauer to USCG dated December 2, 2000 regarding discharge completion estimate and temporary repairs

9

13. Correspondence from Mr. Rosen of MSCI to Reinauer dated February 27, 2004, with photos

14. Order to Alter

15. Correspondence from Commissioner Casazza to Nick Mpras (USCG) dated November 2, 1992, regarding bridge replacement, marked as Exhibit 1 at the Commissioner's deposition

16. Plans prepared by Vollmer and BSC Group in 2005 for "global repairs" total of 9 pages

17. Specifications for Bridge Fender Repairs, Boston, Massachusetts, Chelsea Street Over Chelsea River, prepared by BSC Group, January 2005, 39 pages

18. Engineers' Estimate marked as Exhibit 5 at Will Noonan deposition, 3 pages

19. Allocation of damages for December 2, 2000 Allision marked as Exhibit 4 at Noonan deposition

20. Allocation of damages for December 2, 2000 Allision marked as Exhibit 6 at Noonan deposition

21. Correspondence from John E. Grieco of Vollmer to James Burke dated February 11, 2000 regarding Change Order No. 3 for additional dolphin repairs in the amount of $227,728.97, marked as Exhibit 2 at Noonan deposition

22. USCG's Final Case Report (Truman-Hobbs Action)

23. US Coast Pilot 1, 31st Edition, section 165.120

24. Certified Copy of United States Coast Guard: Chelsea Street Bridge Trumann Hobbs Preliminary Report; Preliminary Case Report; Final

    Case Report; Decision Analysis and Order to Alter; Engineering Input to Final Case Report

25. November 2, 1992 letter from Joseph F. Casazza to Nick Mpras, USCG; Re: Chelsea Street Bridge Repalcement (Exhibit from Casazzza Deposition)

26. November 24, 1992 "Receipt of U.S. Coast Guard Order to Alter, executed by Joseph F. Casazza

27. City of Boston, Department of Public Works, Incident Reports dated: 5/19/95; 8/20/95; 8/30/95; 1/4/96; 2/7/96; 3/14/96; 4/5/96; 6/5/96; 10/24/96; 11/21/96; 11/28/96; 12/7/96; 3/13/97; 3/27/97; 9/8/00; 12/8/2000; 9/4/01; 9/30/04

28. City of Boston, Chelsea Street Bridge Log book pages, marked as exhibits 17 – 42 at deposition of James Burke

29. Photograph of DACE REINAUER pushing barge RTC 502 through Chelsea Street Bridge

30. February 11, 2000 letter from Vollmer Associates to James Burke, with attachments (Exhibit 2 at Noonan Deposition)

31. Reinauer USCG 2692 12-2-00

32. Reinauer tug Alleged Incident Report, December 2, 2000

33. Reinauer barge Alleged Incident Report, December 3, 2000

34. Six Photographs taken by Marine Safety Consultants 12-3-00

35. Memorandum, Mike McCall; Subject: Chelsea Street: Impact damage inspections, photos (w/Dan); Tuesday, December 5, 2000

36. Email, Mike McCall; Wednesday, December 6, 2000 to John Grieco, Chelsea Street fender damage

37. Email; Mike McCall, Tuesday, December 12, 2000, 9:48 a.m. to John Grieco, Daniel Johnson, Chelsea Street Bridge

38. Facsimile: From Vollmer Associates LLP, Mike McCall / John Grieco to Will Noonan, January 4, 2001

39. Memorandum, Mike McCall, Chelsea St: Task #59a (YY) Ballpark constr. Cost est. to Will Noonan, Friday, January 5, 2001

40. Vollmer: Rough Estimate for Project Initiation Purposes; January 4, 2001

41. Memorandum: From Michael McCall to Will Noonan, The BSC Group, January 15, 2001: Re: Bridge Overview Contract – City of Boston Chelsea Street Bridge Fender

42. Vollmer Preliminary Construction Cost Estimate; January 22, 2001

43. Vollmer Associates Work Sheets dated 1/22/01; Chelsea St. Bridge 12-00 Hits

44. January 25, 2001 letter from BSC Group, William T. Noonan to Mr. Para Jayasinghe, P.E., City Engineer

45. Vollmer Preliminary Construction Cost Estimate, January 26, 2001

46. Vollmer & Associates Report Dated 2-1-01

47. Letter dated March 14, 2001 from BSC Group, William T. Noonan, to Para Jayasinghe, City Engineer, Re: Barge Damage to Chelsea Street Fender System

48. Facsimile from W. Noonan to Aboud J. Al Zaim, 11/2/01

49. Vollmer Asscoiates, LLP Record of Conversation, 11/19/01; Diedre Chandler, City of Boston Law Dept, Chelsea Street Fender Damage

50. Facsimile from W. Noonan to Aboud Al-Zaim, dated: January 15, 2002

51. Facsimile from W. Noonan to Karen Meier, January 30, 2002

52. Memorandum to Will Noonan, From Michael McCall, February 1, 2001 (Revised 1/25/02 by KM/AJA)

53. BSC Notes, on or about February 8, 2002

54. February 11, 2002 facsimile from W. Noonan to Aboud Al-Zaim

55. Memorandum, From Aboud J. Al-Zaim to Will Noonan, February 19, 2002

56. Memorandum, From: Michael McCall, P.E. to Will Noonan, February 1, 2001 (Revised 5/6/02 by KM/AJA), Bridge Overview Contract-City of Boston, Chelsea Street Bridge Fender, Damage Report and Repair Costs Estimate for December 2, 2000 Barge Impact, with handwritten notes of William Noonan

57. Facsimile dated 2/20/02 from Noonan to About Al-Zain

58. Preliminary Construction Cost Estimate Chelsea St. Bridge Fender Damage, December 2, 2000; 2/19/02 draft

59. Facsimile dated February 25, 2002 from Will Noonan to About A-Zaim

60. Memorandum, To: Will Noonan from Aboutd J. Al-Zaim, dated March 11, 2002, Re: Response to Review Comments 2/25/02

61. Memorandum, To: Will Noonan from Aboud J. Al-Zaim; March 11, 2002, Re: Response to Additional Review Comments 2/25/02

62. Vollmer Associates Letter of Transmittal; 3/11/02 to Will Noon, P.E., Response to Comments

63. Facsimile: March 25, 2002, from W. Noonan to About A. Zaim

64. Facsimile: March 26, 2002, from W. Noonan to About A. Zaim

65. Memorandum: To Will Noonan, From Michael McCall, February 1, 2001 (Revised 4/4/02 by KM/AJA); Bridge Overview Contract – City of Boston

    Chelsea Street Bridge Fender; Damage Report and Repair Cost Estimate for December 2, 2000

66. Handwritten Notes of William Noonan setting forth changes in estimates from 1/25/02 to 4/4/02.

67. Fascimile: From Aboud Al-Zaim to Mr. William Noonan, May 6, 2002

68. May 21, 2002 letter from Aboud J.; Al-Zaim to William T. Noonan

69. Letter dated June 11, 2002 from William T. Noonan to James Burke; Re: Chelsea Fender Damager (sic) Reports 9/15/00, 12/2/00, 12/8/00

70. Vollmer & Associates Report Dated 2-1-01, Revised 5-6-02

71. Memo: From K. Meler to Ed Condon, July 3, 2002

72. Facsimile from W. Noonan to J. Hannigan dated May 26, 2004

73. Facsimile in William Noonan's handwriting to Aboud A. Al Zaim / K. Meler, undated: "I know I'm semi-anal

74. Letter from DMJM Harris to William Noonan dated January 19, 2005

75. Engineer's Estimate

76. BSC/Vollmer Chart of "December 2, 2000 Allision" damages (Exhibit 4 at Noonan Deposition)

77. December 2, 2000 Allision estimate (Exhibit 6 at Noonan Deposition)

78. Deposition

79. Diagram/Plans "City of Boston, Public Works Department, Bridge Fender Repairs, Chest Street Over Chelsea River"

80. BSC Group, Inc. "Specifications for Bridge Fender Repairs," Boston, Massachusetts, Chelsea Street Over Chelsea River

81. Plaintiff's Response to Defendants Reinauer Transportation Companies, LLC and Boston Towing & Transportation Company's Interrogatories (Exhibit 14, Deposition Burke)

82. Diagram of Allisions (Exhibit 2 from Deposition of James Burke).

83. Reinauer's Freight Job Detail, Barge 502

84. Marine Safety Consultant's Invoice Number 20171

85. Reinauer check stub to Marine Safety Consultants in amount of $753.50

86. N.E.D.P.C. Invoice 10214

87. Reinauer check stub to N.E.D.P.C. in amount of $475.50

88. Ingersoll Rand Invoice Number 684-74873

89. Reinauer check stub to Ingersoll Rand in amount of $340.75

90. Clean Water Invoice number 11569

91. Reinauer check stub to Clean Water in amount of $3,945.15

92. Clean Water job receipt

93. Independent Testing and Consulting Invoice 11020

94. Reinauer check stub to Independent Testing in amount of $400

95. Marine Chemist Certificates

96. Reinauer Wage Distribution Report

97. Reinauer Invoice to Finn & Finn

Objected to

      A. Report and preliminary damage survey dated December 4, 2000 prepared by Neil Rosen of Marine Safety Consultants, Inc. for Reinauer

                              By their attorneys,

| /s/Gino A. Zonghetti | /s/John J. Finn |
|---|---|
| Gino A. Zonghetti | John J. Finn |
| Kenny, Steans & Zonghetti | Finn & Finn |
| 26 Broadway | 34 Chamberlain Street |
| New York, New York  10004 | Hopkinton, MA  01748 |
| (212) 422-6111 | (508) 497-5019 |
| Attorneys for Defendant | Attorneys for Plaintiff |

January 10, 2007